UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| DIDAR KENZHEBAYEV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-CV-180-ZMB |
| | ) | |
| GARY STOLZER, et al., | ) | |
| | ) | |
| Respondents. | ) | |

# MEMORANDUM AND ORDER

Before the Court is Petitioner Didar Kenzhebayev's Petition for Writ of Habeas Corpus. Doc. 1. The Court denies the Petition because Kenzhebayev's detention after the expiration of his parole does not violate his Fifth Amendment due-process rights, he has not shown that the Government acted contrary to its internal regulations, and he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) [1] under binding Eighth Circuit precedent.

## BACKGROUND

### I. Factual Background[2]

Kenzhebayev is a Kazakhstani citizen who illegally entered the United States in March 2023. Doc. 1 ¶ 24; Doc. 10 at 1. After his initial arrest near the border, he "expressed fear of returning to Kazakhstan." Doc. 1 ¶ 24; Doc. 10 at 1. DHS initially indicated that Kenzhebayev would be released "[u]nder other conditions" pending "a final administrative determination in his case." Doc. 1 ¶¶ 26–27; Doc. 1-1 at 9. But instead, he was granted humanitarian parole for a one-year period under 8 U.S.C.

---

[1] The parties and documentation refer to both the United States Code and the Immigration and Nationality Act (INA). For ease of understanding, all references to the INA will be made to the relevant code provision.

[2] For purposes of this Petition, the Court deems the allegations Kenzhebayev asserts as true and supplements those facts with undisputed allegations from the Government. *See* 28 U.S.C. § 2248.

§ 1182(d)(5)(A) "due to insufficient detention capacity and to promote administrative cost-effectiveness." Doc. 1 ¶¶ 3, 28; Doc. 10 at 1–2; *see also* Doc. 1-1 at 6 (noting that parole "will automatically terminate . . . at the end of the one-year period unless ICE [grants] an extension at its discretion."). Kenzhebayev's parole "expired by its own terms" in March 2024, *see* Doc. 1 ¶ 31; Doc. 12 at 4, 12, and almost two years later, he was arrested at a highway weigh station in Missouri,[3] Doc. 1 ¶ 34; Doc. 10 at 2. Kenzhebayev has been detained since then at the Ste. Genevieve County Detention Center, pending the completion of his removal proceedings. Doc. 1 ¶ 39; Doc. 10 at 2. Less than two months after his arrest, an immigration judge ordered him removed to Kazakhstan, Doc. 1 ¶ 42, and his appeal of that decision is currently pending, *id.* ¶ 43.

## II. Procedural Background

Kenzhebayev filed his Petition on July 23, 2026. Doc. 1. He argues his detention is unlawful because (1) "re-detention and continued detention without prompt notice of the individualized basis for custody or a neutral custody hearing violate the Due Process Clause of the Fifth Amendment," (2) the Government violated the *Accardi* doctrine by failing to follow its own regulations, and (3) detention without bond eligibility violates 8 U.S.C. § 1226(a). *Id.* at 14–22. Among other relief, Kenzhebayev asks the Court to "order [the Government] to release [him] immediately from custody" *Id.* at 21. Pursuant to the Rules Governing Section 2254 Cases,[4] as well as Local Rules 5.01 and 5.04, the Court set an expedited briefing schedule. Doc. 4. The Government opposed Kenzhebayev's Petition and provided additional parole records. Doc. 10; *see* Docs. 5, 10-1. Kenzhebayev replied and submitted that an evidentiary hearing is not necessary, Doc. 11 ¶ 2; Doc. 12, so this matter is ripe for adjudication.

---

[3] Following his detention, Kenzhebayev was given a written notice that purported to terminate his parole and was electronically signed 26 minutes after he was arrested. Doc. 10 at 2; Doc. 12 at 3. Both parties agree that this notice did not terminate Kenzhebayev's parole because it had already expired. Doc. 10 at 13 n.13; Doc. 12. at 4. For its part, the Government claims that the written notice was issued "[o]ut of an abundance of caution." Doc. 10 at 13 n.13.

[4] Under Rule 1(b) of the Rules Governing Section 2254 Cases, the Rules generally apply to section 2241 petitions.

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdiction." 28 U.S.C. § 2241(a). A district court may grant a writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). If detention is lawful, "the writ of habeas corpus shall not extend to [the petitioner.]" 28 U.S.C. § 2241(c). A habeas petitioner "bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful." *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1137 (D. Neb. 2025) (collecting cases).

## DISCUSSION

Kenzhebayev advances three main grounds for relief. He primarily argues that his arrest following parole and continued detention each violate the Fifth Amendment. Additionally, Kenzhebayev contends that the Government failed to follow its own custody procedures and claims the right to a bond hearing under section 1226(a). After careful consideration, the Court denies his Petition because all of his arguments fail.

### I. Fifth Amendment Due Process

Kenzhebayev identifies two purported Fifth Amendment violations. First, he argues that "his settled liberty entitled him to notice and an opportunity to respond before re-detention" or, at a minimum, that the Government must provide "prompt notice of the individualized basis for detention and a meaningful opportunity to contest danger and flight risk before a neutral decisionmaker" following his return to custody. Doc. 1 ¶ 53. Second, he contends that the duration of his "continued confinement without any individualized hearing before a neutral decisionmaker violates due process." *Id.* ¶ 60. For its part, the Government insists that "only extreme procedural

deficiencies" not present here, "such as effectively permanent detention where removal is not reasonably foreseeable, or removal proceedings conducted with virtually no notice," may amount to a due process violation. Doc. 10 at 7, 10–11 (emphasis omitted). Kenzhebayev's current detention does not violate due process because the Government generally may detain an alien without a bond hearing and hold him pending the completion of finite removal proceedings.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." That right applies equally to citizens and non-citizens who have "enter[ed] the country." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "[D]eciding what process is due ordinarily requires a form of interest balancing." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). But the Eighth Circuit has held that the relevant factors are balanced when an alien is detained pending finite removal proceedings. *Lugo-Solet v. Mullin*, No. 1:26-CV-52-ZMB, 2026 WL 1162233, at *2 (E.D. Mo. Apr. 29, 2026) (citing *Banyee*, 115 F.4th at 933).

Kenzhebayev acknowledges that this Court has "denied habeas relief to previously paroled petitioners" but submits that the circumstances of his detention are distinguishable. *See* Doc. 1 ¶ 57 (citing *Lugo-Solet*, 2026 WL 1162233; *Camba v. Warden*, No. 1:26-CV-103-MTS, 2026 WL 1351226 (E.D. Mo. May 14, 2026)). In particular, he contends that prior decisions did not confront "a petitioner whom DHS had contemporaneously released under conditions . . . and neither involved a produced record that discloses no release violation, new derogatory information, or current danger-or-flight-risk assessment." *Id.* But Kenzhebayev was granted humanitarian release, not "release[] under conditions." *See infra* at 8–9. And he is simply wrong that other cases "disclose[d] no release violation, new derogatory information, or current danger-or-flight-risk assessment." *See, e.g.*, *Lugo-Solet*, No. 1:26-CV-52-ZMB, Doc. 1 ¶¶ 66–68 (Feb. 26, 2026)

(presenting the same scenario). But in any event, the Government's prior decision to parole Kenzhebayev does not entitle him to notice of the individualized basis for detention or the opportunity to contest danger and flight risk because detention is mandatory and permissible during removal proceedings.

As to confinement after release, Kenzhebayev was granted humanitarian parole due to insufficient detention capacity, *see* Doc. 10 at 1–2, and he had notice that his parole expired by its own terms in March 2024, *see* Doc. 1-1 at 6 (Interim Notice Authorizing Parole signed by Kenzhebayev). While it appears that the Government did not provide *additional* notice ahead of his re-arrest, *see* Doc. 12 at 3 (noting that the "abundance of caution" Termination of Parole was signed after the arrest), Kenzhebayev had notice that his parole would terminate automatically. And he was not entitled to an individualized detention assessment either before or after his detention. Because Kenzhebayev entered the United States without inspection, he was subject to detention without a bond hearing under 8 U.S.C. § 1225. *See Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026); *see also Sangwan v. Warden*, No. 1:26-CV-71-MAL, 2026 WL 1469187, at *2 (finding that the Government's failure to initially detain an alien under section 1225 does not prevent subsequent application of mandatory detention, even absent a flight risk or danger to the community). As such, there is no Fifth Amendment violation flowing from his detention after parole. *See Sangwan*, 2026 WL 1469187, at *2 (As "[d]ue process requirements for revocation of parole are less strenuous than those for initial detention," an immigration detainee is, at most, entitled "to the same process he would receive if being detained for the first time."(internal citations omitted)); *see also Rodriguez v. Vergara*, --- F.4th ---, 2026 WL 3181188, at *5 (5th Cir. 2026) (en banc) ("[When] Petitioners have never been admitted to the United States, due process does not entitle them to additional proceedings beyond what Congress has provided before they may be detained pending removal.")

As for the length of detention, Kenzhebayev's arguments are foreclosed by relevant precedent. The Eighth Circuit has emphasized that "detention pending deportation has a definite termination point—deporting or releasing the alien—making it materially different from potentially permanent confinement authorized by other statutes." *Banyee*, 115 F.4th at 932. Applying *Banyee*, the undersigned found that mandatory detention under section 1225 did not violate the Fifth Amendment where the petitioner was "undergoing removal proceedings," because "he [was] not being detained 'indefinitely.'" *Lugo-Solet*, 2026 WL 1162233, at *2 (collecting cases); *see Rodriguez*, 2026 WL 3181188, at *13 ("So long as an alien's detention pending removal 'has a definite termination point'—removal or release—his or her continued confinement without bond hearing does not offend due process" (citation omitted). *But see Mekonnen v. Stolzer*, No. 1:26-CV-122-AGF, 2026 WL 2029972, at *5 (E.D. Mo. July 14, 2026) (limiting *Banyee* to aliens in "detention pending deportation after criminal conviction," despite equivalent statutory language, based on legislative history).

Here, as in *Lugo-Solet*, Kenzhebayev is undergoing removal proceedings with a foreseeable end date. Indeed, an immigration judge already found him removable. Doc. 1 ¶¶ 42. And while "no briefing schedule [had been] issued" for his appeal, *id.* ¶ 43, the conclusion of removal proceedings is likely closer at hand than in *Lugo-Solet*, where a removal determination had not been made when the Court denied the habeas petition, *see* No. 1:26-CV-52-ZMB, Doc. 1 ¶ 4 n.1 (Feb. 22, 2026). More to the point, the Eighth Circuit has previously found that a much longer period of detention had not reached the point of offending due process.[5] *See Banyee*, 115 F.4th 928, 930 (no due process violation for alien who spent more than a year in custody awaiting removal decision); *see also Rodriguez*, 2026 WL 3181188, at *13 ("[S]o long as removal remains a viable prospect . . . renewed detention . . . does not violate due process."). Because his duration-of-detention argument also fails, Kenzhebayev has not established a Fifth Amendment violation.

---

[5] That said, a due-process violation may occur "if the Government continues to detain an alien after it becomes clear that removal is only a remote possibility." *Rodriguez*, 2026 WL 3181188, at *13; *see Lugo-Solet*, 2026 WL 1162233, at *2 n.4 (recognizing "there is a temporal line beyond which continued detention could violate due process" (quotation omitted)). If circumstances change and Kenzhebayev's removal proceedings stall such that there is no foreseeable end date, nothing prevents him from filing another habeas petition at that juncture.

## II. *Accardi* Doctrine

As a separate basis for relief, Kenzhebayev argues that his arrest ran afoul of agency regulations because it did not comply with the requirements of 8 C.F.R. § 236.1(c)(9). Doc. 1 ¶ 66; *see* Doc. 12 at 7–9. Among other arguments, the Government contends Kenzhebayev's *Accardi* theory fails because the regulation he cites "implicates the 'conditional parole' scheme of 8 U.S.C. § 1226(a)(2)(B), rather than the 'humanitarian parole' scheme of 8 U.S.C. § 1182(d)(5)(A)," under which Kenzhebayev was paroled.[6] Doc. 10 at 12. The Government has the better argument.

"[T]he *Accardi* doctrine bars administrative agencies from taking action 'inconsistent with their internal regulations when it would affect individual rights.'" *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001). As relevant here, "conditional parole" under section 1226(a) and "humanitarian parole" under sections 1182(d)(5)(A) and 1225(b)(2)(A) are distinct types of release from immigration custody. *See Roberto B.Q. v. Lyons*, 2026 WL 3072751, at *1 (D. Minn. June 10, 2026) (citations omitted); *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" pursuant to § 1182(d)(5)(A)). Conditional parole includes conditions of release and may be revoked at the discretion of immigration officials. *See Roberto B.Q.*, 2026 WL 3072751, at *2; 8 C.F.R. § 236.1(c)(9). Humanitarian parole, in contrast, terminates "without written notice at the time it expires" but also can be terminated with written notice "upon accomplishment of the purpose for which parole was authorized or when . . . neither humanitarian

[6] The Government also argues that Kenzhebayev's *Accardi* claim is precluded by the jurisdiction-stripping bar of 8 U.S.C. § 1252(a)(2)(B)(ii)" in that it challenges a decision involving discretion. Doc. 10 at 11. That argument fails because Kenzhebayev disputes "whether mandatory procedures were followed" and questions "[w]hether a decision was made at all" rather than challenging a discretionary act, *see* Doc. 12 at 6; *Khasratov v. Stolzer*, 1:26-CV-173-JMD, 2026 WL 3228092, at *1 (E.D. Mo. Oct. 28, 2026) (observing that "a court may review 'predicate legal questions' that, although relevant to the case, 'do not concern a decision' by the Secretary," provided that such "questions involve only antecedent legal issues that can be answered without prying into the decision itself." (citations omitted)).

reasons nor public benefit warrants the continued presence of the alien in the United States." *Chourio Herrera v. Bondi*, 2026 WL 827571, at *2 (D. Minn. Mar. 25, 2026) (citing 8 C.F.R. § 212.5(e)).

Kenzhebayev's *Accardi* argument is predicated on his parole having occurred under section 1226. *See* Doc. 1 ¶ 66. While the Government's Notice of Custody Determination creates confusion by purporting to invoke section 1226, *see* Doc. 1-1 at 9, Kenzhebayev apparently was never paroled under that provision. First, the Interim Notice Authorizing Parole cites section 1182(d)(5)(A) as the basis for Kenzhebayev's parole—that is, the humanitarian-parole scheme for applicants for admission detained under section 1225. *See id.* at 6; *Jennings*, 583 U.S. at 288; *see also* Doc. 1-1 at 11 (noting that Kenzhebayev had not been *admitted* into the United States). Additionally, there is no evidence that he was granted bond or conditional parole, the two forms of release under section 1226. *See Francisco T. v. Bondi*, 2025 WL 3490809, at *5 (D. Minn. Sept. 5, 2025) (citing 8 U.S.C. § 1226(a)(2)). The Notice of Custody Determination neither set a bond nor released Kenzhebayev on his own recognizance. Doc. 1-1 at 9; *see C. C. v. Blanche*, 2026 WL 2137334, at *3 (D. Minn. July 24, 2026) ("Release on recognizance is a form of conditional parole . . . authorized under section 1226.") (quotations and emphasis omitted). And while the Notice of Custody Determination indicates that Kenzhebayev would be released "[u]nder other conditions" and that additional documentation would be provided, Doc. 1-1 at 9, the only document granting parole is the Interim Notice Authorizing Parole, which clarified that Kenzhebayev was paroled under humanitarian-parole scheme. *Id.* at 6.

Thus, the record indicates that Kenzhebayev was released under section 1225, not section 1226—meaning that 8 C.F.R. § 236.1(c)(9) simply does not apply.[7] Doc. 10 at 13 n.13; Doc. 12 at 7–9 (acknowledging that regulation applies to section 1226 conditional parole while 8 C.F.R. § 212.5(e) applies to section 1225 humanitarian parole). And because the Petition does not allege the violation of a right conferred to him by statute or regulation, his *Accardi* claim necessarily fails.[8]

## III. 8 U.S.C. § 1226(a)

Finally, Kenzhebayev argues that "[h]is detention is governed by 8 U.S.C. § 1226(a), which entitles him to consideration for release on bond or conditional parole and to custody review by an immigration judge." Doc. 1 ¶ 71. To his credit, Kenzhebayev concedes that *Avila* "forecloses relief on this statutory theory in this Court at present." *Id.* ¶ 72. Thus, the Court need not engage with this issue at any length and concludes that this final argument fails under binding precedent.

[7] Kenzhebayev suggests that "factual development would be required" if "the additional release-conditions document(s) referenced on the face of the Form I-286" exist and bear on the issues. Doc. 11 ¶ 3. It is clear from the record that the Interim Notice Authorizing Parole, Doc. 1-1 at 6, is the only plausible additional release-condition document. The Government has confirmed that other documentation was not issued in connection with parole, *see* Doc. 10 at 13 n.13 (indicating that "no Form I-220A was issued" and that the Interim Notice Authorizing Parole was issued "in lieu of an I-94 [form]"), and Kenzhebayev appears willing to accept the Government's word on this point, *see* Doc. 12 at 7–8. Further, Kenzhebayev has equal knowledge as to whether he received additional documentation in connection with his parole but has not alleged receipt of other documents or the existence of release conditions. *See Vargas Lopez*, 802 F. Supp. 3d at 1137 (petitioner "bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful"). Taken together, the record clearly establishes the basis of Kenzhebayev's parole, so further factual development is not necessary.

[8] Perhaps recognizing that he had identified an inapplicable regulation, Kenzhebayev suggests for the first time in his reply that the Government failed to comply with 8 C.F.R. § 212.5 by re-detaining him "absent an authorized public-interest determination by an official." Doc. 12 at 7–8. As this claim is absent from his Petition, the Court deems it waived. *See Hausmann Constr. v. Woodbury Cnty. L. Enf't Ctr. Auth.*, 2026 WL 1587115, at *8 n.4 (N.D. Iowa June 3, 2026) ("Issues raised for the first time in a reply are typically considered waived."). But even on the merits, this new claim is unavailing. Humanitarian parole terminates "without written notice at the time it expires," *Chourio Herrera*, 2026 WL 827571, at *2, and restores the alien "to the status that he or she had at the time of parole," 8 C.F.R. § 212.5(e)(2)(i). Though renewed parole after re-detention is mandated in certain circumstances, *see id.*, it is not required here because there has been a determination from an authorized individual that "[n]either urgent humanitarian reasons nor significant public benefit" justifies parole. *See* Doc. 10-1 at 5; Doc. 12 at 9. And while this finding was made shortly after Kenzhebayev's re-detention, nothing in the regulation suggests that this determination must be made in advance. *See* 8 C.F.R. § 212.5(e)(2)(i) (re-release on parole must occur when it is apparent that deportation or a "removal order cannot be executed within a reasonable time" and there is no opinion from an authorized individual that the public interest requires continued detention).

## CONCLUSION

Accordingly, the Court **DENIES** Petitioner Didar Kenzhebayev's [1] Petition for Writ of Habeas Corpus. A separate Judgment will follow.

So ordered this 16th day of November 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE